(No. 21209.—

The People of the State of Illinois, Defendant in Error, *vs.* Elwood Rose, Plaintiff in Error.

*Opinion filed April 23, 1932.*

Orr, J., dissenting.

LOUIS P. ZERWECK, and C. C. DREMAN, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, H. C. LINDAUER, State's Attorney, and J. J. NEIGER, (CURT C. LINDAUER, JOHN T. THOMAS, and E. F. BAREIS, of counsel,) for the People.

Mr. JUSTICE HEARD delivered the opinion of the court:

Plaintiff in error, Elwood Rose, and C. D. Eckford, were jointly indicted and convicted in the circuit court of St. Clair county for the murder of Elbert Mankin. Both defendants were found guilty, and Rose was sentenced to death by electrocution and Eckford was sentenced to the penitentiary for ninety-nine years. Rose has sued out this writ of error to review the judgment of his conviction.

On August 21, 1931, at about 8:30 or 9:00 o'clock P. M., five white boys were riding in a two-seated Chevrolet coach along the old Cahokia road, just south of East St. Louis. They stopped by the roadside and repaired a flat tire, and after all of the boys but one got into the car two colored men came up to it and at the point of a revolver ordered them to get out. This they did, and the colored men searched and robbed them of some articles of personal property. The robbers saw the headlights of a car coming and ordered the boys to walk over to and lie down in a patch of weeds so that they could not be seen while they were on the ground. The place of the robbery was near where the road crossed the tracks of the Terminal Railroad Company. While the boys were still on the ground, Mankin, who was a police officer for the railroad company, walked toward them. One of the robbers ran out on the road and shouted "Halt!" and then fired a shot which struck Mankin. Mankin fell to the ground and then fired six shots at the colored men, who ran away. Mankin died before assistance could be had to remove him to a hospital.

Upon arraignment the court appointed Louis P. Zerweck and C. C. Dreman to defend both Rose and Eckford. Prior to the trial the attorneys made a motion for a separate trial on behalf of Rose, supported by affidavits stating that the defenses of Rose and Eckford were inconsistent. Rose in his affidavit stated that he did not fire the shot that resulted in Mankin's death but that it was fired by Eckford without the knowledge, consent or assistance of Rose; that upon the trial of the cause he would offer evidence and testify that Eckford fired the fatal shot; that Eckford would attempt to prove, and would testify, that he was not present at the time and place of the shooting and that he did not shoot Mankin, and that the defense of Rose and that of Eckford were inconsistent. Zerweck stated in his affidavit that he had made an investigation of the defenses to be offered by the defendants and that they were inconsistent and if the defendants were tried together they would not receive a fair and impartial trial; that the defendant Rose would testify that he did not fire the shot that caused the death of Mankin but that the shot was fired by Eckford, and that Eckford would testify that he was not present at the time or place of the shooting. The motion for severance was overruled by the court. Thereafter Rose made a motion for continuance, supported by his affidavit, on account of his inability to procure the attendance of Bert Barnhardt, James House and Irvin Brooks; that Barnhardt and House resided at a negro settlement known as Rush City, in the city of East St. Louis, and that Brooks resided in the city of East St. Louis; that Barnhardt would testify that on the night of August 27, 1931, after the shooting of Mankin, Eckford delivered a .32 automatic pistol which belonged to him to Anna Thomas and requested her to keep the same for him; that Brooks would testify that Eckford owned a .32 automatic revolver, and that House would testify that on the day following the shooting Eckford told him that he had fired the shot that pro-

duced the death of Mankin on the night of August 22, 1931; that a subpœna had been issued and placed in the hands of the sheriff for service upon these witnesses and that it had been returned not served. Upon the trial Eckford testified that he was not present at the time of the robbery and shooting, while Rose did not testify.

While the inconsistency of the defense did not appear on the trial for the reason that Rose did not testify, the situation might well be that that inconsistency did not appear by reason of the embarrassing situation in which the attorneys were placed. As stated in their brief, "defendants' counsel were put to the task of presenting two inconsistent defenses to the same jury. It could not be done. Counsel followed their best judgment and put Eckford on the witness stand and did not permit Rose to testify. It may be that in doing so counsel did not perform their full duty to defendant Rose." In *People* v. *Bopp*, 279 Ill. 184, this court, in passing upon a like question, said: "It is the duty of the court not only to appoint counsel of sufficient ability and experience to present the prisoner's defense and protect him from undue oppression, but the court should also appoint counsel who have no interest adverse to the prisoner which would interfere with the fair presentation of his defense, and time and opportunity should also be given to prepare for such defense. It is made the duty of counsel who are appointed to conduct the defense, and the counsel appointed in this case did not undertake to shirk this duty imposed upon him as an officer of the court. He did, however, ask to be excused on the ground that the interest of his client (McErlane) in the trial was antagonistic to that of Bopp. * * * An attorney is an officer of the court, but he also owes a duty to his client which he cannot evade if he would. When the attorney stated to the court that his duty to his client by whom he was retained was inconsistent with the duty which the court sought to impose on him, his statement should have been

accepted." Every defendant who is unable to employ counsel for his defense has a right to have an attorney appointed by the court who can, and will upon the trial, present to the court and jury the defendant's full defense, untrammeled by any conflicting interests of a co-defendant.

The court erred in overruling Rose's motion for a severance, and the judgment of the circuit court of St. Clair county as to him is reversed and the cause remanded.

ORR, J., dissenting.                    *Reversed and remanded.*