STATE OF IOWA, appellee, v. WILLIAM G. KARSTON, appellant.

No. 48663.

(Reported in 72 N.W.2d 463)

OCTOBER 18, 1955.

George E. Flagg, of Des Moines, for appellant.

Dayton Countryman, Attorney General, Raphael R. R. Dvorak, Assistant Attorney General, and Richard H. Wright, County Attorney, for appellee.

THOMPSON, J.—The appellant-defendant, William G. Karston, shot and killed Wendell W. Jones on July 25, 1954. The victim was a substantial and highly respected farmer living in Davis County, and the killing occurred at his home during the course of a robbery of Mr. Jones and his wife perpetrated by the appellant and his half brother, Almer M. Anderson. The two fled in Mr. Jones' automobile, but were shortly after apprehended in Illinois, were returned to Davis County and there

jointly charged with the crime of murder by county attorney's information. The record shows these facts without dispute: the robbery and killing were admitted by both defendants, by written confessions and by testimony in open court upon hearing to determine the degree of guilt and the penalty to be imposed. The crime which deprived Wendell W. Jones of his life was wanton, brutal and entirely without justification so far as appears from the record before us. The actual shooting was admittedly done by Karston, the appellant, while his codefendant and accomplice was in another room of the Jones home engaged in robbing Laura E. Jones, the wife of the deceased. Karston was twenty-nine years of age at the time, Anderson twenty-two. Karston had served a felony sentence for armed robbery in Minnesota, and voluntarily admitted and testified to a long series of burglaries and armed robberies in many states. He also admitted that he was the instigator and leader in inducing his codefendant to accompany him upon the crime-filled week end of which the murder of Wendell Jones was the culminating event.

I. When the defendants were first brought into court on July 29, 1954, it appeared they had no counsel or means of employing counsel. The court appointed Russell Swartz, an attorney of Ottumwa, Iowa, to represent them. The record shows Mr. Swartz has had long experience in handling criminal matters, and the trial court believed his skill and experience fitted him to serve the defendants' interests to the best advantage. He came to Bloomfield, the county seat of Davis County, on the early afternoon of July 29, and after consultation with the defendants appeared in court with them for arraignment. Upon arraignment each defendant pleaded guilty to the offense charged. The court thereupon fixed August 3, 1954, at 10 a. m., as the time of hearing to determine the degree of murder, as provided by section 690.4, Code of Iowa 1954. At this hearing, which began on August 3 and was concluded on August 4, a considerable amount of evidence was taken. There was no dispute in the essential facts, which were fully testified to by the defendants and in particular by the appellant here, as well as by the State's witnesses. At the conclusion of the hearing, the trial court announced it found the defendants guilty of murder

in the first degree, and fixed the next day, August 5, as the time for sentence. Both defendants waived further extension of time and agreed that sentence might be pronounced on the date fixed.

On August 5, both defendants appearing in person and with their court-appointed counsel, the court heard arguments as to the sentence to be imposed. It is of the greatest importance here to note that the Iowa law applicable, section 690.5 of the Code of 1954, fixes only two possible punishments upon a conviction of murder of the first degree, whether by jury verdict or plea of guilty and finding of that degree by the court. The sentence must be either death or life imprisonment. The jury must fix one or the other if it finds a verdict upon trial; the court must do so if it has before it a plea of guilty and determines the murder is of the first degree.

The court having given defendants' counsel the privilege of being heard upon the question of the sentence, Mr. Swartz made a frank and generally able plea for the degree of leniency permitted the court within the limits of the statute, for each defendant. He was compelled to recognize, however, that there was some difference in the ages, past records, leadership in the criminal forays indulged in, and the actual responsibility for the shooting, of the two men. Inadvertently, perhaps, and under the compulsion of the situation in which he found himself, he said to the court: "Now then, I realize that both of them are guilty of first-degree murder. *I do think, however, there is a difference as to what the penalty should be.*" (Italics supplied.)

No matter how ruthlessly he may have disregarded the rights of others, no matter how callously he may have deprived innocent citizens of their lives or property without notice or the slightest opportunity for defense, the wrongdoer, when brought to book in a court of justice, is always quick to insist upon his own rights, to the last technicality; and it is the settled and just policy of our law to give them to him. The more serious the offense of which he is accused, the more carefully will the safeguards of the law be thrown around him. It will not do in any case to say that the accused is plainly guilty of an atrocious murder and so the means used to convict is justified by the end to be attained.

II. The only complaints of the appellant which we find necessary to consider are those pertaining to the appointment of counsel and the latter's efforts in his behalf. The Sixth Amendment to the Constitution of the United States provides that "In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence." Article I, section 10, of the Constitution of the State of Iowa contains substantially similar language. It is appellant's contention here that he did not have effective representation by counsel, in part at least because the same attorney was appointed to represent both defendants and their interests were to some extent adverse. Thus, appellant says that he was deprived of his right to a trial by due process of law, in violation of the Fourteenth Amendment to the Constitution of the United States, and of section 9 of Article I of the Iowa Constitution.

It should be noted that the state courts are bound by the federal courts' interpretation of the law on this point, at least where capital offenses are concerned. Bute v. People of State of Illinois, 333 U. S. 640, 674, 68 S. Ct. 763, 780, 92 L. Ed. 986; Uveges v. Pennsylvania, 335 U. S. 437, 440, 441, 69 S. Ct. 184, 185, 186, 93 L. Ed. 127; Glasser v. United States, 315 U. S. 60, 70, 71, 62 S. Ct. 457, 464, 465, 86 L. Ed. 680; Powell v. Alabama, 287 U. S. 45, 53 S. Ct. 55, 77 L. Ed. 158, 84 A. L. R. 527. It is the definite holding of the Supreme Court of the United States that a failure of a state court to make an effective appointment of counsel may in all cases where the defendant is charged with a serious offense, and certainly does in capital cases, so offend the basic requirements of a fair hearing as to amount to a denial of due process of law contrary to the terms of the Fourteenth Amendment.

We turn then to the question whether the defendant-appellant had effective representation. We refer again to the italicized quotation from counsel's address to the court set out in Division I above. Under the law in Iowa, as we have pointed out, the court had only two possible sentences for these two defendants, who then stood before it convicted of murder of the first degree. The court might sentence each to death by hanging; it might sentence each to life imprisonment; or it might sentence one to death and the other to imprisonment for life.

After making the statement that he thought there was a difference in what the penalty should be for the two defendants whom he represented, counsel proceeded to make it clear which of the two—Almer M. Anderson—was the more entitled to the leniency of the court. This left the appellant-defendant before the court with his own counsel having said, in substantial effect, that hanging might be what he deserved. If there was to be a difference in the penalty, it would necessarily be that one should hang while the other received life imprisonment. The statute permitted no other variation. Nor was there any doubt, if one was to hang, which one that should be. It would of course be the older brother, the one with the long list of crimes, the instigator and leader in the criminal foray, and the one who actually fired the fatal shot.

We have no criticism of counsel for his statement. He was placed in an impossible position, which perhaps both he and the trial court should have recognized, when he undertook to represent both defendants. It will generally be found when two or more are accused of a serious crime, that their interests are to some extent divergent. Often the question will arise as to which was the planner of the crime, which took the leading part, or in many other ways each may desire to attempt to throw the onus upon the other. Separate lawyers for separate defendants may not in all cases prove an unmixed blessing; the result may be attempts by each to cast the blame upon the other, to the profit of the prosecution. But it is settled that where there may be adverse interests, each defendant is entitled to separate representation. Glasser v. United States, supra; People v. Lanigan, 22 Cal.2d 569, 140 P.2d 24, 148 A. L. R. 176, and annotations beginning on page 183 of 148 A. L. R.; People v. Rose, 348 Ill. 214, 180 N.E. 791; People v. Bopp, 279 Ill. 184, 116 N.E. 679.

III. The State thinks it incumbent upon the defendant to show prejudice resulting from the failure to appoint separate counsel. We said in State v. Martin, 243 Iowa 1323, 1334, 55 N.W.2d 258, 264, 34 A. L. R.2d 904, 914: "Since this is a capital case, when any substantial right of the defendant is transgressed prejudice will be presumed." In Glasser v. United

States, supra, at pages 75, 76 of 315 U. S., page 467 of 62 S. Ct., is this language:

"To determine the precise degree of prejudice sustained by Glasser as a result of the court's appointment * * * is at once difficult and unnecessary. The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial."

But if prejudice were necessary to be shown, it abundantly appears here. What counsel said to the court was, in substantial effect, that he thought there was a difference in the penalty it should impose; that Anderson should have the lesser sentence of life imprisonment. What that left for the appellant needs no elaboration.

IV. The State also contends that the appellant acquiesced in the appointment of joint counsel, and has waived any right to object thereto. That a defendant in a criminal case may waive his right to the assistance of counsel is well settled. But it should be clear from the record that he has done so. A waiver is a voluntary relinquishment of a known and understood right. Again we quote from Glasser v. United States, supra, at page 70 of 315 U. S., page 465 of 62 S. Ct.: "To preserve the protection of the Bill of Rights for hard-pressed defendants, we indulge every reasonable presumption against the waiver of fundamental rights." See also Patton v. United States, 281 U. S. 276, 50 S. Ct. 253, 74 L. Ed. 854, 70 A. L. R. 263. We find no reason for discussing the question of waiver further, since it must be apparent that, even if it could be said the appellant waived his right to separate counsel (which we do not hold), he had no reason to expect his attorney would advise the court as he did. It is true that the record shows that counsel frankly told Karston that he could not promise he could do anything for him, and that he might hang. It may also be true that Karston felt himself to be the guiltier of the two, largely responsible for his younger brother's predicament, and willing to bear the burden if one of them must receive the death penalty. But he was not bound to anticipate the unfortunate statement made. We see no escape from the conclusion

that he did not have effective representation by and assistance of counsel, and so was not tried by due process of law, within the meaning of the Federal and State Constitutions.

Other questions urged are lacking in merit and are not likely to be raised upon a retrial.—Reversed and remanded.

OLIVER, C.J., and WENNERSTRUM, HAYS, SMITH, and LARSON, JJ., concur.

GARFIELD and BLISS, JJ., dissent.

GARFIELD, J. (dissenting)—I cannot concur in this opinion. I do not think there is any precedent for it. Certainly none has been cited. The statement of counsel on which a reversal is based is merely a self-evident truth which apparently was made in good faith and reflected Karston's own feeling in the matter.

I would affirm.

BLISS, J., joins in this dissent.