**People of the State of Illinois, Defendant in Error, v. Robert L. Van Hyning, Plaintiff in Error.**

**Gen. No. 65–126.**

Second District.

June 23, 1966.

Rehearing denied and opinion modified August 31, 1966.

Stephen A. Ellis, of Rockford, for appellant.

William G. Clark, Attorney General, of Springfield (William R. Nash, State's Attorney and Philip G. Reinhard, Assistant State's Attorney, of Rockford, of counsel), for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court.

After a joint trial, the defendant, Robert L. Van Hyning, and William D. Lindquist, were found guilty of the offense of burglary by a jury in the Circuit Court of Winnebago County. The defendant was sentenced to the penitentiary for a period of not less than 2 nor more than 7 years. While incarcerated, he instituted the present forma pauperis proceeding which was filed in the Supreme Court, and counsel was appointed on his behalf. The Supreme Court, by order of October 19, 1965, found that no substantial constitutional issues were involved and transferred the case to this court.

The burglary in question took place at the Carlson Legion Post in Rockford in the early morning hours of July 12, 1961. Certain merchandise, medals, objects, money and papers were taken. Shortly after noon on the same day, the defendant's probation officer and two detectives, without knowledge that the defendant had

been involved in this burglary, went to an apartment which had been rented to Lindquist and the defendant, to pick upon the defendant for violating his probation. The apartment door was partly open and the defendant and Lindquist were asleep. The probation officer and the detectives entered the apartment and saw, in open view, golf clubs, whiskey, medals and other objects which were the property of the Carlson Legion Post.

The detectives and the probation officer questioned the defendant and Lindquist concerning the property and searched them—as well as the premises. They found $129 in defendant's pocket and $114 in Lindquist's. While the officers were searching the premises, the defendant ran out of the door and fled. Later in the afternoon he was apprehended on the roof of a building on Charles Street.

The defendant was unemployed at the time, and had worked only two weeks during the preceding month—at a salary rate of $1.25 per hour—for which he had been paid about two weeks prior to the burglary. The defendant consistently denied any complicity in the burglary.

On October 4, 1961, the defendant and Lindquist were arraigned. Counsel of his choice appeared for the defendant. Lindquist was without counsel and suggested that the court appoint defendant's attorney to represent him. The court asked if any adverse interest would be involved, and counsel replied that he didn't know but would have to look into the matter. The following colloquy occurred:

"THE COURT: Sometimes where there are two defendants, their interests get diverse as the case goes on. I will appoint an attorney for you. And I will carry the case the same as to both of the defendants at this time, unless you want Mr. Ingras-

171

sia to represent you at the arraignment, then you can do that.

"Is is (sic) not guilty?

"MR. INGRASSIA: Yes. Motion to quash, and plea of not guilty.

"THE COURT: All right, I will appoint Mr. Ingrassia to represent you at this point of the hearing. Then if it gets to another point, after you look into it, if it looks like there is going to be adverse interests between the two defendants, I will appoint someone else to defend the other one. There might be different defenses, or something like that. I will appoint you at this time to represent him.

"Let the record show that the defendants and each of them have been furnished with copies of the Indictment and a list of the jurors.

"Is there any motion as to the Indictments?

"MR. INGRASSIA: Yes, your Honor, motion to quash, and we do not care to argue it.

"THE COURT: Let the record show motion to quash as to each defendant heard and overruled."

Copies of two written statements made by Lindquist were furnished to his attorney, along with a list of the witnesses to the making and acknowledgment of each statement. At no stage of the proceedings did counsel for the defendant and Lindquist move to sever the cases for trial or to appoint another attorney for Lindquist due to the adverse interests of Van Hyning and Lindquist. The defendant's defense was a denial of participation in the crime and that of alibi: His alibi testimony did not specifically preclude participation in the burglary with reference to the time of the offense, and no witnesses were called to testify to corroborate the alibi.

The written statements by Lindquist were substantially identical, except the statement made on July 18, 1961, implicated Frank Phillips in the burglary, and that of July 19, 1961, implicated the defendant. Lindquist also

made an oral statement implicating the defendant in the burglary. The trial court held a hearing outside the presence of the jury relative to the voluntariness of each statement, and it is admitted by counsel for the defendant that the trial court properly found adversely to Lindquist on his contention of duress. All three of these statements were admitted in evidence without objection. The trial court repeatedly admonished the jury that if either Lindquist or the defendant made any statement outside the presence of the other, such statement could only be used against the person making it; and the jury was so instructed.

■ The indictment charged that defendant and Lindquist did break and enter into the building in question with intent to steal and carry away property of the Robert G. Carlson American Legion Post 1207, a not-for-profit corporation. The charter established that the correct corporate name was Lt. Robert C. A. Carlson Post No. 1207, The American Legion, and the court ruled that the variance was inconsequential. The defendant made an objection to the court's ruling and challenges it on appeal. However, variances such as here set forth are not fatal. The People v. Thomas, 20 Ill2d 603, 606, 607, 170 NE2d 543 (1960); The People v. Nelson, 17 Ill2d 509, 511, 512, 162 NE2d 390 (1959).

At the trial, the property seized in the apartment and properly identified as being the property of the Carlson Legion Post was admitted in evidence without objection. It included Carlson Legion Post medals, a citation, insurance policies and a liquor license. No motion was filed at any time to suppress such evidence.

■ The defendant contends that the trial court erred in denying the unargued motion to quash in that the indictment did not set forth the exact situs of the burglary or the proper date thereof, which hindered defendant in preparing his case for trial and could have exposed him to double jeopardy. Since the filing of brief herein,

173

these contentions have been decided adversely to the defendant. The People v. Blanchett, 33 Ill2d 527, 532, 533, 212 NE2d 97 (1965) ; The People v. Reed, 33 Ill 2d 535, 539, 540, 213 NE2d 278 (1965) ; People v. Trammell, 65 Ill App2d 331, 334, 335, 213 NE2d 74 (1st Dist 1966) ; People v. Heidleberg, 66 Ill App2d 169, 213 NE2d 140 (4th Dist 1965).

The defendant also urges that this court should exercise its discretionary power under section 121–9(a) of the Criminal Code (Ill Rev Stats 1963, c 38, par 121–9(a)) and take notice of errors committed in the trial court which, though not preserved for appeal, adversely affected his substantial rights. The portion of the section referred to provides: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." Section 121–9(a) embraces the philosophy that a defendant is entitled to a fair criminal trial, and if prejudicial arguments are made or other prejudicial errors occur to the extent that his substantial rights are violated and the judicial process cannot stand without deterioration, then a reviewing court may consider such assignments of error even though no objection was made in the trial court and no ruling thereon made or preserved.

Reviewing courts—prior to the enactment of the Criminal Code—had announced such philosophy and exercised such supervisory powers in proper cases. In The People v. Burson, 11 Ill2d 360, 143 NE2d 239 (1957), where counsel first raised the question of the defendant's sanity in opening argument and again in motion for new trial, but failed to seek or obtain any ruling by the trial court on the issue of a sanity hearing, the court affirmatively exercised such power, and at pages 370 and 371 stated:

"The court may, as a matter of grace, in a case involving deprivation of life or liberty, take notice

174

of errors appearing upon the record which deprived the accused of substantial means of enjoying a fair and impartial trial, although no exceptions were preserved or the question is imperfectly presented. (Citations.)"

Such power was likewise exercised in The People v. Bradley, 30 Ill2d 597, 198 NE2d 809 (1964) where the trial court improvidently ordered a severance; in The People v. Sprinkle, 27 Ill2d 398, 189 NE2d 295 (1963) where the conduct of the trial court was prejudicial; and in The People v. Moore, 9 Ill2d 224, 137 NE2d 246 (1956) where the State's Attorney made a highly prejudicial argument.

 However, the necessity for judicial accommodation between the exercise of such power and the orderly administration of justice, as well as the welfare and safety of the public at large, indicates that the reviewing court should exercise judicial restraint in reversing the trial court for errors not brought to its attention by customary procedures. The basic reason for the general rule that issues, points or contentions, other than those going to the court's jurisdiction of the subject matter, or that the indictment does not charge an offense, will not be considered on appeal unless presented in the trial court and properly preserved for review, is that the trial court should not be reversed upon a ground not submitted to it and upon which it did not, and was not asked, to decide. The People v. Brand, 415 Ill 329, 337, 114 NE2d 370 (1953); People v. Triplett, 66 Ill App2d 237, 241, 213 NE2d 290 (2nd Dist 1966). Consequently, reversals where the alleged errors were not brought to the attention of the trial court must be limited to errors or defects affecting substantial rights of the defendant—errors which in themselves preclude fundamental fairness in the trial. Under the circumstances of this case, we would not be warranted in exercising our dis-

175

■

cretionary power under section 121–9(a) of the Criminal Code.

The defendant asserts that he was denied a fair trial in that his counsel was handicapped by having to represent both the defendant and Lindquist "in the joint trial, where the defenses were antagnonistic" [sic] ; and that the statements by Lindquist implicating him were improperly allowed to reach the jury. The answer to the first part of defendant's assertion is that it is not true factually. The defendant has failed to state any handicap which he suffered because his counsel also represented Lindquist. The defendant was represented by counsel of his choice, who was appointed by the court to represent Lindquist after the court had inquired of counsel whether their interests would be adverse, and counsel had informed the court that he did not know but would look into the matter. The appointment was made with the express statement by the court that if the interests of the defendant and Lindquist were then adverse, or later became adverse, the court would appoint someone else to defend Lindquist. During the trial, neither counsel for the defendant, the defendant, nor Lindquist, ever asserted that the interests of defendant and Lindquist were adverse. Such charge was not made by the defendant until after the jury returned its verdict of guilty.

■ The defendant further argues that the trial court should have ordered the deletion of all reference to defendant in Lindquist's written implicating statement ; and that the court's failure to do so constituted prejudicial error. However, prior to the time the written statements were admitted in evidence, counsel for defendant had cross-examined a police officer who testified on behalf of the People, and had elicited from him that in his presence, Lindquist told the defendant that he (Lindquist) had implicated the defendant in the burglary. Consequently, the jury was aware of the party to whom Lindquist's written statement of July 19, 1961, referred. Any dele-

tion of defendant's name therefrom would have been a useless act, and his counsel made no such request.

■ ■ There is no question that a confession by one of two jointly indicted defendants is not evidence against the codefendant not making it, but that it is admissible against the confessor, if properly restricted by instruction. The competing factors to be balanced under such circumstances are the possible prejudicial effect of such confession against a codefendant, and the loss of competent and relevant evidence against a confessor. Determining a proper balance of such factors is difficult and a careful factual analysis of each case is required. As the court stated in The People v. Skelly, 409 Ill 613, 100 NE2d 915 (1951) at pages 622 and 623:

> "The only practical solution seems to be to follow the general rule and admit such confessions as against the confessor only, using every precaution to avoid prejudice to the codefendant. This does not close the door to refusing to follow the rule when sufficient actual prejudice appears, and that, we think, should be done."

In the case at bar, we find no actual prejudice to defendant because of the admission of the Lindquist statement without the deletion of defendant's name therefrom.

■ The question of joint or separate trials for defendants—who are jointly indicted—has given rise to many problems. However, the law is rather clear. The statement in People v. Chapman, 66 Ill App2d 124, 214 NE2d 313 (1st Dist 1965), at page 127, is particularly applicable to the case under consideration, to wit:

> "It is only when the interests of the joint defendants are *in fact* antagonistic that the court must grant separate trials or require separate legal representation. People v. Dolgin, 415 Ill 434, 448, 114 NE2d 389 (1953). A finding of adverse interests

or incompetency or incompatibility of counsel cannot be based solely on mere assertions. People v. Wolff, 19 Ill2d 318, 322, 167 NE2d 197 (1960). Unless defendant properly establishes that a conflict of interest actually exists, or this fact becomes apparent during the trial itself, the court will not indulge in speculation to determine whether separate counsel, in the interest of justice and fair trial, is required. People v. Rose, 348 Ill 214, 180 NE 791 (1932) and People v. Bopp, 279 Ill 184, 116 NE 679 (1917).

"In the instant case, defendant raises the issue for the first time on appeal, abstractly and absent of any supporting facts. We have carefully examined the record to determine in what respect defendant could have been prejudiced or in what way his interests and those of codefendant Jones could be adverse or antagonistic. We find nothing that could indicate any such incompatibility or conflict."

In the case at bar the lack of severance for separate trials and the circumstances complained of were not such that defendant's substantial rights were violated and that the judicial process deteriorated because of any act or omission of his counsel or the trial court. The factual situation of this case does not call for the exercise of the supervisory powers of this reviewing court in these respects.

Lastly, the defendant raises a constitutional question and contends that his rights under the 4th Amendment to the Constitution of the United States, and under Article II, Section 6 of the Constitution of the State of Illinois, were violated when certain articles found by the law enforcement officers in the course of an unreasonable search and seizure were admitted in evidence. The record indicates that the apartment door was partly open and that certain articles of stolen property were in open

178

view. Absent any motion to suppress or objection to the admission of such articles in evidence, the facts concerning whether they were visible through the open door were not elicited, and on this record we cannot determine that the search and seizure was unlawful.

 In its order transferring this case to this court, the Supreme Court stated:

> "The defendant also urges that evidence obtained through an unlawful search was admitted in evidence. No motion to suppress was made in the trial court and the claim will not be considered here."

We can only construe this language of the transfer order to mean that such alleged error was waived by failure of the defendant to move to suppress such evidence in the trial court. In addition, no objection was offered to the admission of such evidence in the trial court. The judgment of the trial court is accordingly affirmed.

Judgment affirmed.

MORAN, P. J. and ABRAHAMSON, J., concur.