202 So.2d 563 (1967)
Bernard R. BAKER, and Charles O. Dalton, Jr., Appellants,
v.
STATE of Florida, Appellee.
Nos. 35536, 35537.
Supreme Court of Florida.
September 20, 1967.
*564 Michael O'Haire and G. Kendall Sharp, Vero Beach, for appellants.
Earl Faircloth, Atty. Gen., and George R. Georgieff, Asst. Atty. Gen., for appellee.
O'CONNELL, Justice.
The defendants, Bernard R. Baker and Charles O. Dalton, Jr., were tried by jury and found guilty of the felony murder of Francis A. MacKenzie. The jury did not recommend mercy for either defendant, and both were sentenced to death.
On Christmas night, 1965, Dalton and Baker followed the decedent and his wife from a cocktail lounge in Vero Beach to the MacKenzie home. The defendants stopped their automobile near the driveway of the decedent's home and approached the MacKenzies appearing as travelers who had lost their way. While Baker talked to Mr. MacKenzie, Dalton struck Mrs. MacKenzie on the head with a hammer rendering her unconscious. Dalton then administered a a similar blow to Mr. MacKenzie. The medical evidence, and the confession of Baker, demonstrates that Dalton struck each of the MacKenzies a second time as they lay on the pavement of the driveway. Baker searched the disabled person of Mr. MacKenzie and took fifty dollars from his pocket.
The defendants left Vero Beach and drove to St. Augustine where they stopped at a motel. They entered the motel and Baker assaulted the desk attendant with a hammer. The defendants were taken into custody on the 26th of December in St. Augustine and after a preliminary hearing the county judge ordered the defendants bound over on the charge of felonious assault on the motel desk attendant. On the 27th of December, detectives from Vero Beach interviewed the defendants with reference to their possible involvement in the MacKenzie robbery. The defendants were fully advised of their rights, including their right to have the State provide them with counsel should they not be able to afford one; neither defendant requested counsel. The defendants were interrogated alternatively from 2:00 in the afternoon until 12:30 in the morning of the 28th with an hour break for dinner. The sessions with each defendant were generally an hour in length, the longest session with either defendant lasting about two hours. At the end of the interrogations, each defendant had confessed to his participation in the robbery of the MacKenzies.
The defendants were placed in the custody of the Vero Beach detectives and were returned to Vero Beach. The detectives and defendants arrived in Vero Beach about 9:00 in the evening on the 28th of December. Before the defendants were taken to the county jail, the detectives asked to be shown the scene of the robbery. Baker directed the detectives to the MacKenzie home. Once in the MacKenzie driveway, Baker, in detail, explained how the robbery had been accomplished; he drew diagrams of the house, driveway and the positions of the bodies of Mr. and Mrs. MacKenzie; he also provided the detectives with a sketch of the hammer Dalton had used to strike the MacKenzies.
On the 29th of December, the defendants were requested to initial typographical errors in their confessions, and swear before a notary public that the statements were true. After the corrections in their confessions had been made, the defendants were taken before a committing magistrate and bound over for trial on the charge of robbery. On the 30th of December, Mr. MacKenzie died as a result of the beating at the hands of Dalton.
On the morning of the 31st of December, the defendants were taken before a committing magistrate and bound over on the charge of first degree murder. Thereafter they were indicted for murder in the first degree.
During his confinement prior to trial, Baker wrote a letter to his uncle containing evidence of the guilt of both defendants. The letter was intercepted by the jailor of *565 the county jail and read as a standard security measure. A copy of the letter was made before it was delivered to the post office; this copy was introduced and received as evidence at trial.
At the time of the commission of the offense charged, his confession and at all of the preliminary hearings, Baker was 20 years of age. The record does not disclose whether or not his parents were notified of the charges made against him. We will assume for purposes of this appeal that they were not notified. However, when the grand jury returned its indictment against the defendants, Baker had reached his majority.
After defendants were arraigned on the indictment for murder the trial court appointed two members of the bar to jointly represent both defendants. The attorneys made timely objections to their appointments, contending that the court should have appointed separate counsel for each defendant. The trial court did not modify its order, and the defendants went to trial each represented by both attorneys.
On this appeal the appellants contend that: (1) they were denied effective representation by counsel because each defendant was represented jointly by both court appointed counsel; (2) their confessions should not have been admitted into evidence; (3) the copy of Baker's letter, written in his jail cell and intercepted by the jailor, should not have been received into evidence; and (4) that the appellant Baker's parents should have been notified of the charges against him prior to his attaining majority.
It has long been the policy of this state to fulfill the constitutional guaranty of right to counsel by appointment of attorneys in all capital cases. F.S. 909.21, F.S.A. Since Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) appointment of counsel in other criminal prosecutions is now assured. Roy v. Wainwright, Fla. 1963, 151 So.2d 825. The question presented here goes deeper than the mere right of an indigent to have appointed counsel. It involves one aspect of effectiveness of counsel. This question has not been previously answered by the appellate courts of this state. However, the federal courts and some state courts have dealt with it.
In Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942) one of two co-defendants had retained counsel to represent him. The district court appointed the attorney retained by the one defendant to also represent the other defendant who was unable to employ his own counsel. In reversing the convictions of the defendants the Supreme Court of the United States said:
"* * * are we clear that the `Assisttance of Counsel' guaranteed by the Sixth Amendment contemplates that such assistance be untrammeled and unimpaired by a court order requiring that one lawyer shall simultaneously represent conflicting interests. If the right to the assistance of counsel means less than this, a valued constitutional safeguard is substantially impaired." 315 U.S. at 70, 62 S.Ct. at 465.
The appellate courts of several of our sister states have reached the same conclusion as that expressed in Glasser. People v. Bopp, 1917, 279 Ill. 184, 116 N.E. 679; People v. Rose, 1932, 348 Ill. 214, 180 N.E. 791; People v. Lanigan, 1943, 22 Cal.2d 569, 140 P.2d 24, 148 A.L.R. 176; People v. Robinson, 1954, 92 Cal.2d 741, 269 P.2d 6; State v. Karston, 1955, 247 Iowa 32, 72 N.W.2d 463; State v. Brazile, 1954, 226 La. 254, 75 So.2d 856, and State v. Tapia, 1966, 75 N.M. 757, 411 P.2d 234.
Each of the cited decisions held that an appointment under which one or more attorneys were required to represent jointly two co-defendants denied the defendants effective representation of counsel. The basis for the holdings was that such an appointment denied the individual defendant representation by an attorney who could act for his best interest without regard to the effect of such action on the interest of the *566 co-defendant. The interests and defenses of most co-defendants are conflicting. Evidence, strategy and defenses which will benefit one co-defendant usually are detrimental to the other. It is this conflict and inconsistency of position which makes it impossible for the same counsel to effectively represent two or more co-defendants simultaneously.
Our canons of ethics also condemn an appointment which would require an attorney to simultaneously and jointly represent co-defendants unless those represented expressly consent. Rules 4, 5, 6 and 37, Code of Ethics Governing Attorneys, 32 F.S.A. et seq. While these canons were designed primarily to govern the conduct of attorneys privately retained by free choice of a client the reasons for their adoption and the principles to be served are equally important in cases where counsel is furnished by order of court. That which an attorney cannot do when retained by a client is no less unethical when the representation is pursuant to court order.
In the instant case two attorneys were appointed to simultaneously and jointly represent two co-defendants whereas in Glasser only one attorney represented both defendants. As it has been held in State v. Tapia, supra, and People v. Rose, supra, it makes no difference that two or more attorneys, instead of one, are required to represent the conflicting interests of two or more defendants. Insofar as effectiveness of counsel is concerned it matters not how many attorneys are jointly appointed. What matters is that each attorney appointed is required to represent all defendants and neither defendant has individual counsel who can act independently in making his defense.
We therefore hold that the appointment of counsel in this case denied the defendants the right to effective assistance of counsel promised by both our federal and state constitutions.
The state, however, contends that even if the defendants were entitled to have separate counsel, the error was harmless because defendants have not shown they were prejudiced. We cannot agree. As was said in Glasser, 315 U.S. at 76, 62 S.Ct. at 467:
"The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial."
See also Whitaker v. Warden, Maryland Penitentiary, 362 F.2d 838, 841 (C.C.A. 4 1966); Goodson v. Peyton, 351 F.2d 905, 909 (C.C.A. 4 1965); United States v. Bentvana, 319 F.2d 916, 937 (C.C.A. 2 1963); Lott v. United States, 218 F.2d 675, 682 (C.C.A. 5 1965); cf. MacKenna v. Ellis, 280 F.2d 592, 601 (C.C.A. 5 1960). The state court decisions cited in support of our holding on the appointment of counsel issue are of like effect.
Accordingly, we hold that it was unnecessary that the defendants show prejudice flowing from the denial to them of separate counsel.
Because of what we have held thus far the judgments of conviction and sentences must be reversed and this cause remanded for new trial in which each defendant will be represented by his separate counsel. The confidence which may have been shared by the defendants with their joint counsel would seem to dictate that neither of those attorneys be appointed as separate counsel for either of the defendants. Although we have determined the other questions presented to be without merit two of them will no doubt arise again on retrial so we will comment on them now.
The defendants argue that their confessions should not have been admitted in evidence because "they were freely and voluntarily given and * * * were given only after arduous questioning by the police and were given without representation of counsel and without knowledge that they *567 would be used against them in a first degree murder case."
Defendants admit that they were warned of their rights, including their right to have counsel furnished by the state, prior to their confessing to the MacKenzie robbery on December 27, 1965. The record also shows that they had, on December 26, been given a preliminary hearing on the charge of felonious assault on the motel desk attendant. Defendants argue that the warnings and advice as to their rights is not enough. They say that the confessions were not good because counsel was not present when they confessed, citing Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). The Massiah case is simply not relevant. The evidence held inadmissible in that case was not obtained through interrogation but surreptitiously through a concealed electronic device.
Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), although not cited by defendants, is more in point here than Massiah. We have carefully considered the requirements prescribed in Miranda and find they were met in this case. The extra-judicial confessions here involved were obtained through questioning while defendants were in custody, but this does not vitiate the confessions if the questioning is properly conducted. Dawson v. State, Fla. 1962, 139 So.2d 408. The interrogation of defendants was correctly done. We hold the confessions were voluntary and admissible in evidence. Grant v. State, Fla. 1965, 171 So.2d 361 and Roberts v. State, Fla. 1964, 164 So.2d 817.
Defendants next contend that the interception and copying by the jailor of a letter written by Baker to an uncle was an invasion of Baker's right of privacy and an illegal seizure. We cannot agree.
The jailor to whom the letter was given for mailing, read it as a standard security measure practiced to insure the internal stability of the jail. Thus, the letter came into possession of the state in the orderly process of the operation of the jail. There are no Florida cases in point. The use of admissions against interest in letters written by prison inmates has been held proper by the United States Supreme Court. Stroud v. United States, 251 U.S. 15, 40 S.Ct. 50, 64 L.Ed. 103 (1919). Stroud is still the law. Hayes v. United States, 367 F.2d 216 (C.C.A. 10 1966). We know of no rule of law or constitutional provision which prohibits the use in evidence of a letter obtained in this way. An opinion of our Florida Attorney General is persuasive authority for their use. 1953-54 Op. Atty. Gen. 722. We hold the copy of letter was properly admitted.
Baker's argument that his conviction is void because his parents were not notified of the trial pursuant to F.S. 932.38, F.S.A. is without merit. The statute requires such notice to be given prior to trial of a minor. Baker had reached his majority more than a month prior to the trial. In any event the point is moot since on retrial Baker will be well past 21 years of age.
Because of the improper appointment of joint counsel the judgments and sentences appealed from are reversed, and the cause remanded for a new trial.
CALDWELL, C.J., and THOMAS, ROBERTS, DREW, THORNAL and ERVIN, JJ., concur.