214 So.2d 52 (1968)
Michael DUNBAR, Appellant,
v.
STATE of Florida, Appellee.
No. 68-230.
District Court of Appeal of Florida. Second District.
September 18, 1968.
*53 Robert E. Jagger, Public Defender, and Carleton L. Weidemeyer, Asst. Public Defender, Clearwater, for appellant.
Earl Faircloth, Atty. Gen., Tallahassee, and Robert R. Crittenden, Asst. Atty. Gen., Lakeland, for appellee.
LILES, Chief Judge.
In 1965, appellant, Michael Dunbar, and three co-defendants were tried and convicted by jury of the crime of robbery. Throughout the proceeding, Dunbar and one co-defendant were jointly represented by the Public Defender's Office. At the trial there was no objection to these arrangements and no showing of a possible conflict of interest.
Two years after Dunbar's conviction the Florida Supreme Court in the historic case of Baker v. State, Fla. 1967, 202 So.2d 563, held that where two or more co-defendants are jointly represented by an appointed attorney or attorneys, they are usually denied effective representation of counsel, contrary to the dictates of the Sixth and Fourteenth Amendments to the United States Constitution, the Code of Ethics Governing Attorneys and the Florida Constitution.
Subsequently, appellant filed a Motion to Vacate Judgment and Sentence, pursuant to CrPR 1.850, 33 F.S.A., and predicated upon the Baker decision. The motion was denied without hearing by the trial court and this appeal ensued.
We must first decide whether the failure of the appellant, who along with a co-defendant was jointly represented by appointed counsel, to object to the joint representation or to request independent counsel waived his right to raise the point on appeal. Secondly, if there was no waiver, we must then decide whether to apply the rule of the Baker case retroactively.
With respect to the first issue, there exists a definite difference of opinion among the judiciary. The Third District Court of Appeal has held that an objection or request is absolutely necessary, while the Fourth District Court has held that it is not. Compare Youngblood v. State, Fla.App. 1968, 206 So.2d 665, with Belton v. State, Fla.App. 1968, 211 So.2d 238, 239. In the recent case of Williams v. State, 214 So.2d 29, opinion filed September 4, 1968, this court aligned itself with the Fourth District and held that "no objection is necessary in view of the fundamental right involved." Nowhere, however, did we express an opinion with respect to whether or not prejudice need be shown by a criminal defendant on appeal when he alleges error arising from a conflict of interest based upon the joint representation of his attorney with another criminal defendant. After a careful reading of Baker, we now conclude that the demonstration of such a conflict is an absolute prerequisite to relief, and in this regard agree with the Third District. Belton v. State, supra; see also, State v. Tapia, 1966, 75 N.M. 757, 411 P.2d 234; People v. Rose, 1932, 348 Ill. 214, 180 N.E. 791. We note that the record of the instant case is devoid of any showing of conflicting interests, and for this reason alone, we would be compelled to affirm the lower court.
There is, in addition, another reason for affirming. We do not believe that the Baker case has retroactive application. The United States Supreme Court has in recent years enunciated numerous new constitutional standards respecting criminal procedure and the fundamental rights of the accused, and it is noteworthy that while many of these new standards were applied retrospectively, a significant number were given prospective application only.[1] Compare Roberts v. Russell, 392 U.S. 293, *54 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968) and Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), with Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966); Tehan v. United States ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966); Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). Our problem is, therefore, to determine what process of reasoning should be adopted in the instant case to resolve the question of retroactivity. It is initially clear that the choice between retroactivity and non-retroactivity is not determined by the particular constitutional provision upon which it is predicated. Johnson v. State of New Jersey, supra. It is self-evident, however, that the primary purpose of the trial is to determine truth. Tehan v. United States ex rel. Shott, supra. And the Supreme Court has applied newly formulated rules of criminal procedure retrospectively where those rules were directed toward correcting serious flaws in the so-called "fact-finding process" at trial. Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). It should nevertheless be noted that whether or not a constitutionally based rule of criminal procedure augments the integrity and dependability of the fact-finding process is purely a matter of degree. That is to say, the question of retroactivity depends directly upon the extent that the discredited practice affects adversely the reliability of the fact-finding process. Stovall v. Denno, supra. The problem of determining the proper application of the newly enunciated procedural rule is, therefore, a matter of weighing and balancing, of contrasting and comparing, the realistic effects of the old and new standards on the determination of truth, and on societal welfare.
In the cases of Johnson v. State of New Jersey, supra, and Stovall v. Denno, supra, the Supreme Court enunciated in clear terms the proper elements to be included in this balancing procedure. It is said that:
"The criteria guiding resolution of the question implicates (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards." Stovall v. Denno, 388 U.S. 293, 297, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199 (1967).
With respect to the first guideline, it is clear that the purpose for providing an appointed attorney for every individual criminal defendant is to eliminate the awkward situation in which the same attorney might be forced to argue conflicting theories on behalf of co-defendants before a jury. Baker v. State, Fla. 1967, 202 So.2d 563; Youngblood v. State, Fla.App. 1968, 206 So.2d 665. More broadly, the new standard insures each defendant of his Sixth and Fourteenth Amendment rights. It is significant, however, that we are speaking within the realm of mere possibility. Although a possibility of conflict existed under the old standard, there was no compelling probability that the fact-finding process would be aborted by its use, as there was, for example, when no attorney at all was provided for indigents. Gideon v. Wainwright, supra. In addition, certain inherent "safeguards" are present in our system of justice that have tended to mitigate against the probability of injustice evolving. The Canons of Ethics Governing Attorneys, for example, have made both the bench and bar acutely aware of the "conflict of interest" question and steps had been taken to alleviate the problem. Thus, through the use of the Motion For Severance, pursuant to CrPR 1.190(i) (2), 33 F.S.A., separate trials could be obtained when the interests of co-defendants were in conflict. Moreover, if an attorney jointly represented one co-defendant to the detriment of another, then CrPR 1.850, 33 F.S.A., provided the opportunity to obtain post-conviction relief upon an allegation of inadequacy or inefficiency of counsel. Therefore, although the Baker rule *55 offers a better standard by which to dispense justice, the old standard did not necessarily pervert the fact-finding process.
The second guideline provided by the Supreme Court concerns the extent of reliance by law enforcement agencies on the old standards. Since the Gideon case the Florida courts have conscientiously provided counsel for all indigents and made every effort to protect other constitutional rights. It is safe to say that until the Baker decision there was no foreshadow of the new rule that evolved; that is, the courts and law enforcement agencies of Florida were absolutely justified in their reliance upon the old standard.[2]
The final guideline articulated by the Supreme Court concerns the effect of retroactivity on the administration of justice. There can be no doubt that an application of the Baker rule retrospectively would impose an intolerable burden on the administration of justice in Florida. It is further clear that since the Gideon decision a substantial percentage of criminal cases have involved two or more persons, almost all of whom were declared insolvent and given the services of the Public Defender. To require retrial of all these persons is patently unwarranted particularly since the likelihood of undoing the few injustices that may have resulted is minuscule.
After careful deliberation, we conclude that Baker should be applied in prospective fashion only, and, therefore, we affirm the lower court's denial of appellant's motion for post-conviction relief. All other considerations raised by appellant have been examined and found to be without merit.
HOBSON and MANN, JJ., concur.
NOTES
[1] For a well reasoned philosophical justification for applying new standards in prospective fashion only, see Linkletter v. Walker, 381 U.S. 618, 622-630, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965).
[2] Although it is possible to point to Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), as a decision militating to some extent against reliance on the now discredited standard, that case, we believe, is distinguishable from the one before us. In the first place, it was applicable only to federal courts and not to state tribunals. Secondly, the facts of Glasser and the instant case present somewhat different problems. In Glasser one defendant's retained attorney, over objection, was appointed to represent a co-defendant simultaneously. No indigent defendants were involved. The Supreme Court held that such an action prejudiced the defendant who had retained the attorney, but that the co-defendant had not yet shown any prejudice. In the instant case we have one attorney appointed to represent two indigent co-defendants. We think the facts of Glasser, decided twenty-one years before Gideon, are dissimilar enough from the present case so that it did not materially detract from Florida's reliance upon the pre-Baker standard.