STATE OF IOWA, appellee, v. DONALD E. LOWDER, appellant.

No. 51362.

(Reported in 129 N.W.2d 11)

854

JUNE 9, 1964.

REHEARING DENIED JULY 16, 1964.

Harold D. Vietor, of Cedar Rapids, for appellant.

Evan L. Hultman, Attorney General, John H. Allen, Assistant Attorney General, and Jack M. Fulton, Linn County Attorney, for appellee.

PETERSON, J.—On May 23, 1963, a county attorney's true information was filed in Linn County charging Donald E. Lowder with the crime of uttering a forged instrument in violation of section 718.2, 1962 Code of Iowa. Defendant entered a plea of not guilty. Upon trial of the case the jury found defendant guilty. He was sentenced to a term of not to exceed ten years in the Iowa State Penitentiary at Fort Madison. Defendant appealed.

I. Defendant is charged with uttering a draft of United Fire & Casualty Company of Cedar Rapids dated May 13, 1963. The draft was made out originally for $50.56 jointly to defendant and Collins Employees Credit Union. A numeral four was placed in front of the figures of $50.56 on the draft and the words four hundred were filled in, in front of the words "Fifty & fifty-six hundredths."

The allegation against defendant is that he took this draft to Federal Discount Corporation in Cedar Rapids and cashed it. Defendant owed said company in the neighborhood of $40. He gave the draft to Charles Gaffey, the assistant manager of the company. The draft was endorsed "Collins Employees Credit Union" and "Donald E. Lowder." Mr. Gaffey cashed the draft, taking out the difference between $450.56, and $406 and some cents, to pay defendant's bill to the company, and delivered the balance in cash to defendant.

After defendant had entered his plea of not guilty his case was assigned for trial on July 22, 1963. At that time he was represented by an attorney of his own selection named Dwight Krumboltz of Cedar Rapids. On July 12, 1963, defendant's attorney, on his behalf, filed a motion for continuance and as grounds therefor stated that defendant wanted to complete some hospital treatment, and he needed more time to meet some pressing financial obligations. The county attorney did not resist the application and the case was continued until the October 1963

term of court. When the October term convened the case was assigned for trial on October 14, 1963.

On October 9, 1963, defendant's attorney, Dwight Krumboltz, withdrew his appearance for and representation of defendant. Lowder was notified as to such withdrawal by letters from Mr. Krumboltz and also from the office of the County Attorney, which letters were received by him on October 10. On October 11 defendant went to the office of the county attorney to talk with him about representation. The county attorney sent him to District Judge Penningroth. Defendant conferred with Judge Penningroth. Defendant advised Judge Penningroth the case was set for trial on October 14 and requested a continuance. Judge Penningroth made an order continuing the case until October 28, 1963. When defendant later testified in connection with his new attorney's motion for further continuance the following questions and answers were asked and answered:

"Q. When you asked for the continuance of Judge Penningroth did you ask that he appoint an attorney for you? A. That wasn't discussed because Judge Penningroth offered to do it, an attorney.

"Q. Did you ask his appointment? A. He so indicated that such time I wouldn't have an attorney that surely the court would appoint me one."

On October 24 the county attorney's office contacted appellant by telephone and asked him if he was represented by an attorney and who the attorney was. Appellant's answer was that the county attorney would find that out next Monday in court.

When defendant appeared in court on Monday, October 28, he had no attorney. He then for the first time requested the trial court to appoint an attorney to defend him. The trial court complied and appointed Mr. Harold D. Vietor, an experienced and able attorney. Mr. Vietor came to the courthouse immediately and moved for a continuance for the purpose of preparing for trial. The request was in fact granted. The trial court stated that the conclusion of the principal trial of the case would be made on November 25, which gave defendant and his attorney approximately four weeks to prepare for trial. The only reservation made by the court was the selection of the jury on that

date and the taking of the testimony of two State witnesses from Burlington and Storm Lake. When defendant so superciliously advised the county attorney's office on October 24 in effect that he would meet the county attorney with his own attorney on Monday, October 28, it was only a matter of careful attention to the business by the county attorney that the State subpoenaed two witnesses who were coming from Burlington and Storm Lake. One of the two witnesses was being called into military service, so it was necessary that his testimony be taken promptly.

Mr. Vietor then requested the county attorney to let him have his private notes as to the investigation of the members of the jury panel. The county attorney objected saying they were private papers belonging to his office and should not be made public. The trial court sustained the county attorney as to this point.

The parties then proceeded to select the jury and the two witnesses from out of town were examined by the county attorney and cross-examined by Mr. Vietor. Appellant's attorney made no objection to this procedure. The case was then adjourned until November 25, 1963.

At the time of adjournment the trial court admonished the jury not to discuss the case with anyone and that they should return on November 25 for the conclusion of the case. However, it was later postponed from the 25th until the 26th of November by reason of the funeral of President Kennedy, which took place on November 25.

The court also asked the jury to return on the following Monday morning to be ready to render jury service in any other cases on call prior to the conclusion of the case at bar. Appellant's counsel offered no objection to this use of jury procedure at the time it was announced by the trial court. Eight of the jurors and two of the alternates who had been selected in defendant's case served on some civil cases during the period of the continuance. After the court proceeded with the case on November 26 six more witnesses were called on behalf of the State and five witnesses testified for appellant. The case was submitted to the jury on November 27. The jury returned a verdict of guilty.

II. Appellant raises two questions as errors: 1. The court erred in overruling defendant's motion for continuance made

prior to the selection of the jury and the presentation of two witnesses for the State. In connection with overruling the motion for continuance appellant contends he was denied his constitutional right to be properly represented by effective counsel. 2. The trial court also erred in that defendant was denied a fair and impartial trial, since several of the jurors selected for defendant's case served on other juries during the four weeks continuance between the first and second part of defendant's trial.

One vital question is whether the constitutional rights of defendant were jeopardized by the examination of two of the State's witnesses on October 28 instead of November 26. The two witnesses were important in the case. Mr. William C. Pfost was a claim adjuster for the United Fire & Casualty Company of Cedar Rapids. On May 13, 1963, he delivered the draft in question in this case to defendant. He testified when he delivered the draft to defendant it was in the amount of $50.56. Mr. Vietor requested a brief recess in order that he might confer with his client before cross-examining Mr. Pfost. The court recessed for five minutes and defendant and counsel had a consultation.

After the recess defendant's counsel cross-examined Mr. Pfost at length and there was redirect examination by the county attorney. No other material facts than as above stated were elicited.

The other witness called by the State was Mr. Charles Gaffey. In May of 1963 he was the assistant manager for the Federal Discount Corporation in Cedar Rapids. He had been with the corporation for about two and one-half years. He testified that on May 13, 1963, defendant came into the office of the corporation between three and five o'clock in the afternoon. Defendant had an account with the corporation on which he was in arrears for two or three months. The monthly payments on the account were thirteen or fourteen dollars. It was at this time and place that defendant presented the draft which had been given to him by Mr. Pfost on the same date. However, it had been altered as heretofore shown in Division I. The name of the Collins Employees Credit Union was endorsed on the back of the draft by an unauthorized person. Mr. Gaffey did not testify to the fact because he had no knowledge concerning it, but there was testi-

mony by a later witness showing that the endorsement on the draft was not made by anybody connected with Collins Employees Credit Union. Mr. Gaffey, under cross-examination, stated that he always marked on the back of any draft which he cashed, the amount of money paid to the such draftee. Consequently, there appears on the back of the draft Exhibit 1 the figures $406.51. Court adjourned at 4:55 p.m. on October 28 and before the direct and cross-examination of Mr. Gaffey was concluded, so defendant and his counsel had an opportunity on the evening of October 28 to make inquiry concerning Mr. Gaffey. The record shows this inquiry was made. Next day Mr. Vietor cross-examined Mr. Gaffey at considerable length.

Mr. Gaffey also testified he saw defendant the next day after cashing draft at the police station, since the draft had been returned to Federal Discount Corporation by the bank, unhonored. When Mr. Gaffey saw defendant at the police station he testified defendant asked him to hold up any charges until the following noon. He told Mr. Gaffey he wanted time to raise the money and in the conversation he mentioned the figure of four hundred dollars.

We are at a loss to see where the direct examination or the cross-examination of Mr. Pfost and Mr. Gaffey would have been any different if it had been made on November 26 and 27 instead of October 28 and 29. We are at a loss to see where any rights of defendant were in any manner jeopardized by the proceeding which the trial court in its discretion permitted. In fact, it would appear that the taking of the testimony of Mr. Pfost and Mr. Gaffey on October 28 and 29 created a valuable situation for defendant and his counsel. They knew in the latter part of October exactly what the principal State witnesses were going to say. They had a month in which to arrange for and have ready any helpful witnesses for defendant whom they could secure during the four weeks continuance.

III. A fundamental principle of law both as to federal courts and as to state courts is that it is the duty of the courts to see that a person charged with a crime receives a fair trial and is effectively represented by counsel. This is assured under the provisions of Amendment 6 and section 1 of Amendment 14 to

the Constitution of the United States, and Article I, sections 9 and 10 of the Constitution of Iowa. Such constitutional provisions are all familiar and well known.

The principle has been approved numerous times in both federal and state decisions. We cite only two of each: Powell v. Alabama, 287 U. S. 45, 53 S. Ct. 55, 77 L. Ed. 158, 84 A.L.R. 527; Gideon v. Wainright, 372 U. S. 335, 83 S. Ct. 792, 9 L. Ed.2d 799; State v. Myers, 248 Iowa 44, 79 N.W.2d 382; State v. Karston, 247 Iowa 32, 72 N.W.2d 463.

In connection with this principle the facts of each case stand alone. It is almost impossible to find precedents that are completely analogous. The case at bar is a good example of such differences.

The trial of the case was therefore held at two different times, about one month apart. The record discloses the trial court was desirous of granting every right to defendant to which he was entitled and was desirous of giving his able attorney a chance to prepare his defense.

We are confronted with the question of whether defendant was prejudiced by this procedure and whether under the provisions of the Constitutions of Iowa and the United States the rights of defendant were in any manner jeopardized.

Was defendant prejudiced by the selection of the jury on October 28 instead of November 26? On either date the selection would be made from the same jury panel. It was a jury called for the October term of court, which reached into November.

Defendant's attorney had all the time he wanted to examine in detail each juror called for service. He did make such examination before the jurors were seated and two jurors were rejected. Defendant and counsel had four weeks to further investigate the jurors summoned to serve, and raise objections on resuming the trial November 26. No objections were made which is conclusive evidence that defendant and counsel had none. We are unable to see where there was any prejudice as to the rights of defendant. If the jury was selected on November 26 instead of October 28 the selection would be made from the same jury panel.

Great emphasis has been placed upon the discretion of a trial court with reference to granting of continuances. State v.

Maupin, 196 Iowa 904, 192 N.W. 828; State v. Hathaway, 224 Iowa 478, 276 N.W. 207; State v. Myers, supra; United States v. Yager, 220 F.2d 795, 796 (C. A. 7th, 1955).

 In State v. Maupin, supra, at page 908 we said: "We have said, in substance, so often that authorities need not be cited in support thereof, that an application for continuance is addressed peculiarly to the sound discretion of the trial court, and that its ruling thereon will not be interfered with on appeal unless it clearly appears that the trial court has abused his discretion, and an injustice has resulted therefrom."

The general policy of the federal court is shown in the Yager case, supra: "Whether a continuance should be granted is addressed to the sound discretion of the trial court. There can be no error in denying a motion for continuance unless it is clearly shown that there has been an abuse of discretion. * * * An examination of the record before us does not disclose an abuse of discretion."

The question of discretion as to continuance, together with other wholesome philosophical statements in connection with the rights of defendants in cases such as the instant case appear in State v. Myers, supra, on pages 48, 50 and 51 as follows:

 "I. It is true one of our most prized and cherished rights under the Federal and State Constitutions is the right to a fair trial. In order to give substance to this announced right we provide that one accused of a crime shall have benefit of counsel, and in most jurisdictions the court has said this means 'effective counsel.' * * *

"Section 775.4, Code of Iowa, 1954, provides: 'If the defendant appears for arraignment without counsel, he must, before proceeding therewith, be informed by the court of his right thereto, and be asked if he desires counsel; and if he does, and is unable to employ any, the court must allow him to select or assign him counsel, not exceeding two, who shall have free access to him at all reasonable hours.' "

" 'The whole matter of granting a continuance rests largely in the discretion of the trial court, and it should only be granted for a cause which satisfies the court that substantial justice will be more nearly obtained. * * * This court will not interfere with

the action of the trial court in this respect, unless it clearly appears that such discretion has been abused and an injustice has been done [citing cases].' "

"We conclude no abuse of the trial court's discretion in overruling the motion for continuance appears and that the court was correct in rejecting the motion for a new trial upon that ground."

In the case at bar there does not appear any abuse of discretion as far as continuances for appellant are concerned.

Appellant only cites four cases in support of his ground for reversal under point A. Powell v. Alabama; Gideon v. Wainright; State v. Myers and State v. Karston, all supra.

The federal cases sustain the well-known and recognized rule that a defendant in a charge of felony against him is entitled to have an attorney appointed to defend him. We have heretofore referred to the Myers case, supra. The important ruling in the Karston case is that where there were two defendants whose interests were at least to some extent adverse, each defendant is entitled to be represented by a separate attorney.

The court in the case at bar was more lenient with reference to continuance than the trial court in the Myers case. The Myers case was a murder case. There had been selections of attorneys by defendant and they had resigned. The case had been set for trial on October 17, 1955. On October 11 the trial court appointed one attorney and on October 13 appointed the president of the Scott County Bar to assist in the defense. On October 17 the attorneys filed motion for continuance in order to give them an opportunity to prepare for trial. The motion was denied and the trial was commenced on October 19. This was only a spread of eight days as to one attorney and of six days as to the other attorney. As a matter of fact, to all intents and purposes, the trial court in the case at bar granted defendant and his attorney four weeks in which to get ready for the real trial of the case.

IV. The only other assignment of error by appellant is that his rights were jeopardized because during the interim between October 29 and November 26 when appellant and his attorney were preparing for trial eight members of the jury and the two alternates which had been selected on October 28 were

used by the court in connection with the trial of some civil cases. Defendant's counsel only cites one case in support of this position. This was the 78-year-old case of Lyons & Dickey v. Hamilton, 69 Iowa 47, 28 N.W. 429. The facts were that a jury was impaneled on the evening of April 21. On April 22 plaintiffs filed an amended and substituted petition. Defendants moved for continuance of the case until the next term. The court overruled the motion, but did give defendant until the next day, April 23, to prepare for trial. In the meantime, on April 22, the court used part of the jury which had been impaneled for the Lyons case in the trial of a civil case, which was started and concluded on April 22. On appeal defendants assigned such procedure as reversible error. In an opinion written for the court by Judge Rothrock the case was reversed on said ground.

There may have been other circumstances and conditions which are not clear in the decision that could have been a basis for the ruling of the court, but on the simple statement of facts as above stated, we do not agree and would hold to the contrary.

If we should hold the matter of a juror serving on some civil cases prior to criminal cases to be reversible error as appellant's counsel urges, we would play havoc with almost every term of the District Court held in Iowa. This would not only mean that defendant would have a new trial because some of the jury on his case had served on civil cases during the interim of four weeks, but it would mean that any court in any district in Iowa would be unable to make a sensible and common-sense assignment of cases. It is common practice, and necessary for orderly procedure in the trial of cases, that the trial court assign some civil cases to be tried before criminal cases are tried. A reversal of this case on that basis would mean that no juror who has served on two or three civil cases could be called on a criminal case to be tried later.

No matter of prejudice of any nature appears in the record by reason of the service in civil cases of some of the members of the jury on defendant's trial. Appellant's counsel contends prejudice is presumed from the facts herein. Prejudice can only be presumed if it appears clearly that some substantial rights of defendant have been transgressed. State v. Karston,

supra. The record does not disclose that a substantial right of defendant was denied him. He received four weeks continuance to prepare for trial before the case was finally submitted to the jury. The fact that the jury believed the evidence of the State rather than defendant's statements does not prove loss of substantial rights.

As to the jury selected to try the case, there is no claim by appellant that it, nor any member thereof, was not fully qualified to act as such juror. Defendant's counsel had four weeks to investigate and never made a complaint.

Defendant's actions were such that he in fact waived many elements involved in a trial. The fact that an alleged criminal has what might be called sacred constitutional rights does not mean the court must coddle him. Society in general is 99 percent or more honest, right thinking and law abiding, and it has some rights as against the small percentage of the public, who insist on transgressing the laws of both God and man. As to waiver, see State v. Meyers, 256 Iowa 801, 129 N.W.2d 88.

■ Defendant never objected at anytime, either in October or November, as to trial at different times. He never objected to separation of the jury, which is a matter primarily within the discretion of the trial court. See 780.19, 1962 Code of Iowa; State v. Giudice, 170 Iowa 731, 153 N.W. 336, Ann Cas. 1917C 1160.

We hold the trial court did not abuse its discretion in failing to continue one small segment of defendant's trial for a more extended period of time.

The case is affirmed.—Affirmed.

GARFIELD, C. J., and THOMPSON, LARSON and STUART, JJ., concur.

SNELL, THORNTON and MOORE, JJ., dissent.

HAYS, J., not sitting.

SNELL, J.—I respectfully dissent. I do so with reluctance because the defendant was insolent and capricious.

Prior to the morning of October 28, 1963, when Mr. Vietor

was appointed as counsel the defendant was uncooperative and recalcitrant in the face of solicitous efforts by the court and the county attorney to protect his right to counsel. He created a dilemma. Unless defendant's actions are construed as a waiver of his constitutional rights the subsequent procedure cannot be defended.

The hospital treatments referred to by the majority in Division I were psychiatric treatments. Irritating as defendant's actions undoubtedly were I do not think they constituted a voluntary waiver or a justification of the precipitous procedure that followed. Defendant may have been psychotic, stupid, or just plain ornery, but he did not waive his right to a fair trial.

On the day set for trial the defendant appeared without counsel. Mr. Vietor was called and told of his appointment to represent defendant. He was introduced to the defendant and within a few minutes (at 9:43) moved for continuance. Evidence thereon was taken. The case was continued until November 25, *except for the selection of a jury and the introduction of the evidence by the State.*

The county attorney refused to give Mr. Vietor any information relative to the personnel of the jury. Admitting, arguendo, that defendant's counsel was not entitled to the work product contained in the county attorney's files the fact remains that defendant's counsel was completely lacking in factual information when forced to select the jury and cross-examine the two principal witnesses for the State.

Following the direct examination of the first witness for the State, defendant's counsel was given a *five-minute recess* for the purpose of conferring with the defendant and in preparation for cross-examination.

This witness was immediately followed by the man who cashed the draft for the defendant.

Court was adjourned at 4:55 p.m. until 9 a.m. the next morning. Cross-examination of this witness indicated threats of criminal prosecution to the wife of defendant by the State's witness.

At 11:04 a.m. on October 29 the case was adjourned with

trial to be reconvened on November 26. In the interim several of the jurors served as jurors in other cases.

In speaking of the request for continuance, the majority opinion says, "The request was in fact granted." I would not so interpret the record. It is true that the trial was recessed for almost a month, but before that defendant's counsel was forced into the selection of a jury and the cross-examination of the principal witnesses for the State.

The State resisted defendant's motion for continuance on October 28 on the ground that one of the principal witnesses was under subpoena and was present and that his induction into the armed services was imminent and he would not be available to testify at a later date. In appellee's brief and argument the State attempts to refute the idea that there was need for more effective cross-examination by commenting "It is interesting to note that no attempt to recall those witnesses for further cross-examination was made by the appellant after the continuance." These two positions are somewhat inconsistent.

If these witnesses were still available on November 26 why was it so imperative that their testimony be taken on October 28 and 29? The case could have been continued for a few days, the witnesses held over and a proper trial held. All of this trouble could have been avoided. The jury verdict might have been the same but with the defendant facing ten years in the penitentiary we should not make that assumption.

A defendant is not supposed to be faced with surprise witnesses. He has the right to be fully advised in advance of trial of what the State's witnesses will say. Here defendant's counsel was completely in the dark. The State's case was made and the defendant's case lost before defendant's counsel had time to find out what it was all about.

It is well settled, as the majority opinion admits, that the right to counsel means "effective counsel." Mr. Vietor, a competent attorney, did not in my opinion have a chance to be "effective counsel" or a fair opportunity to make a defense. I would reverse.

THORNTON and MOORE, JJ., join in this dissent.