**Carroll K. COPELAND, Appellee,**

v.

**James STEWART, Appellant.**

**No. 55184.**

Supreme Court of Iowa.

Dec. 20, 1972.

Life, Davis & Life, by Howard S. Life, Oskaloosa, for appellant.

Barnes & Schlegel, by W. T. Barnes, Ottumwa, for appellee.

Heard before MOORE, C. J., and MASON, RAWLINGS, REES, and HARRIS, JJ.

RAWLINGS, Justice.

Damage action for alienating affections of plaintiff's wife resulted in a jury verdict for plaintiff. From judgment accordingly entered defendant appeals. We affirm.

Carroll (plaintiff) and Frances Copeland (Frances) were married in 1949. Five children were born to them.

Mr. and Mrs. Copeland ultimately became active NFO members. In 1968 Frances accepted employment as a secretary in the NFO office at Fairfield. There she became acquainted with defendant, James Stewart, a national director of the organization. The positions held by these two required that they often work together at night—sometimes all night.

The evidence discloses plaintiff and his wife enjoyed a normal and relatively happy relationship prior to 1968, then she changed.

Once the Copelands went to Dysart with Stewart on NFO business. On their return trip defendant stated he could not live without Mrs. Copeland, and during the drive could not keep his hands off her. In September of 1969, while the parties were at a Mount Pleasant NFO picnic, defendant and Frances disappeared several times.

The Copeland children testified defendant phoned their mother almost every day and they would "sweet talk" each other. Diane Copeland, a daughter, testified she saw her mother and Stewart embracing in the Copeland home basement, and on a trip to Minnesota in 1968 her mother bought a gift for defendant.

All of the children testified to the effect that prior to the time Mrs. Copeland went to work their parents got along well and the family did things together, but after their mother started working her attitude toward them and their father changed completely.

At one time defendant sent a valentine to Mrs. Copeland with the inscription "Love to My Francis (sic) Jim."

When called as an adverse witness by plaintiff's counsel the defendant denied, on direct examination, having ever made any trips alone with Frances where they stayed all night together. He also denied having ever slept with her in the same motel, hotel, trailer or any vehicle.

Gerald F. DeMuth, a private detective engaged by plaintiff, testified he once followed Stewart and Frances from Iowa City to Starved Rock State Park in Illinois where they stayed alone all night in defendant's camp trailer.

On direct examination by his own attorney Stewart admitted he had stayed overnight with Frances at Starved Rock State Park but stated it was for the purpose of preparing NFO letters.

The Copeland children further testified regarding the love and affection their mother had for their father before she went to work for the NFO and they had never seen their father mistreat their mother.

Mrs. Copeland left her husband and family in February of 1970, has since been seen with defendant, and seldom if ever visits the children.

Plaintiff's testimony reveals his wife had assisted him in rearing the children, cooked, washed clothes, did the ironing and cleaned the house, but this changed after she became acquainted with defendant, and the children now do all that work.

Carroll testified he loves his wife and wants her to return home.

Viewing the evidence in a light most favorable to plaintiff, such is the record be-

fore us. See Dobson v. Jewell, 189 N.W. 2d 547, 550 (Iowa 1971); Kiger v. Meehan, 253 Iowa 746, 748, 113 N.W.2d 743 (1962). See also Olson v. Katz, 201 N.W. 2d 478, 483 (Iowa 1972).

Errors urged by the defendant in support of reversal are (1) the verdict is not supported by the record, (2) trial court erred in limiting defendant's cross-examination of plaintiff and his witnesses, (3) trial court erroneously failed to segregate the jury, (4) the verdict is the product of passion and prejudice and is excessive.

■ I. It must be inceptionally understood, if there is substantial evidence supporting submission of the case to a jury we will not interfere. See Kiger v. Meehan, *supra.*

■ Also our review of this law action is confined to errors properly assigned and argued. See Iowa R.Civ.P. 334; Knudsen v. Merle Hay Plaza, Inc., 160 N.W.2d 279, 281 (Iowa 1968).

II. In support of his claim that there is insufficient evidence upon which trial court submitted this case to a jury defendant argues there could instantly have been no alienation of affections because Frances Copeland testified she never had any love or affection for plaintiff.

■ The aforesaid contention is without merit. In Dobson v. Jewell, 189 N.W.2d at 550, this court held, when appeal is taken by defendant from judgment on a verdict for plaintiff, we need consider only the evidence favorable to plaintiff whether or not it is contradicted.

■ Furthermore, even if plaintiff and his wife were living together unhappily, and more or less estranged before defendant appeared on the scene, this would not militate against submission of the case to a jury, being rather a matter to be considered in assessing damages. See Castner v. Wright, 256 Iowa 638, 654–655, 127 N.W. 2d 583, and 128 N.W.2d 885 (1964).

In an alienation of affection action the three essential elements are:

"1) wrongful conduct of defendant, 2) loss of affection or consortium of plaintiff's spouse, and 3) causal connection between such conduct and loss. Actual intent to alienate is not necessary if defendant's conduct is inherently wrong and tends to and does have the effect complained of." Allen v. Lindeman, 164 N.W.2d 346, 348 (Iowa 1969).

■ We find the evidence, viewed favorably to plaintiff as aforesaid, adequately suffices to establish all of the foregoing elements and now hold substantial evidence amply supported submission of the case to a jury.

■ III. Defendant's second assignment regarding alleged limitations imposed on his cross-examination of plaintiff and supportive witnesses, not being argued, is waived. See Meyer v. Schumacher, 160 N.W.2d 433, 438 (Iowa 1968).

IV. We turn now to defendant's claim of error by trial court in failing to segregate the jury.

Never at any time in course of trial did Stewart's counsel so much as indicate to the court any desire or need for jury segregation. See generally State v. Lowder, 256 Iowa 853, 864, 129 N.W.2d 11 (1964).

Rather this subject was first mentioned in defendant's motion for new trial, then by an unsupported conclusory statement. See Iowa R.Civ.P. 244–245.

■ In any event this issue must be resolved adverse to defendant under our pronouncement in Castner v. Wright, 256 Iowa at 655–656, 127 N.W.2d at 593.

V. Defendant's final contention is, the verdict emanated from passion and prejudice and is excessive.

Assuming, arguendo, this matter was presented to trial court by the aforesaid new trial motion, it must be deemed to

have been there found devoid of substance. We agree. Neither passion and prejudice nor excessiveness of the verdict is here demonstrated. See Allen v. Lindeman, 259 Iowa 1384, 1398–1399, 148 N.W.2d 610 (1967); Annot., 36 A.L.R.2d 548.

Affirmed.