# IN THE COURT OF APPEALS OF IOWA

No. 22-0324
Filed February 8, 2023

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**WAYLON JAMES BROWN,**
    Defendant-Appellant.
_____

    Appeal from the Iowa District Court for Woodbury County, James N. Daane, Judge.

    Waylon Brown appeals after a jury found him guilty of first-degree robbery and willful injury causing serious injury. **AFFIRMED.**

    Martha J. Lucey, State Appellate Defender, and Ashley Stewart, Assistant Appellate Defender, for appellant.

    Brenna Bird, Attorney General, and Kyle Hanson, Assistant Attorney General, for appellee.

    Heard by Greer, P.J., Chicchelly, J., and Danilson, *S.J.

    *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2023).

**CHICCHELLY, Judge.**

Waylon Brown appeals after a jury found him guilty of first-degree robbery and willful injury causing serious injury. He challenges the sufficiency of the evidence supporting his robbery conviction. He also contends his convictions should be merged and contests the trial court's refusal to grant a mistrial. Because substantial evidence shows he committed first-degree robbery, we affirm.

**I. Background Facts and Proceedings.**

Brown's convictions stem from his involvement in an October 2021 attack on Jeremiah Jensen. The attack occurred at around 5:30 a.m. as Jensen walked back to his apartment after buying doughnuts from a nearby convenience store. Jensen testified that as he approached the apartment complex, he encountered Brown, who he knew from the neighborhood. When Brown began talking about an incident from two weeks earlier involving Brown's girlfriend, Jensen replied, "I don't care. I got my own problems." Jensen then heard Brown say, "Get him, Tommy," before Tommy White charged at him with a baseball bat. Jensen ran to the front of the building where he knew there was a surveillance camera as both men gave chase. As Jensen reached the door to the complex, Brown shoved him from behind. Jensen fell against the door, and White struck him in the back of the head with the bat. The backpack Jensen was wearing was taken along with a phone from his pocket before the men left. When Jensen reached his apartment, his cousin called 911 for an ambulance. During that call, Jensen named Brown and White as his attackers. He was transported to a hospital, where thirteen staples were needed to close the wounds on his head.

Detective Nathan West of the Sioux City Police Department was assigned to investigate the attack. As part of his investigation, Detective West retrieved the video from the apartment complex's surveillance camera. The camera recorded around thirty-eight seconds of the attack, although some of the action occurs offscreen because of the camera's placement. In the video clip, Jensen appears onscreen first, running up to the apartment building from the street. Brown follows close behind, not more than an arm's length away from Jensen. Finally, White enters the frame a few paces behind Brown with a baseball bat in his right hand. Jensen and Brown leave the frame at the bottom of the screen as they reach the building's door, and White slows his pace as he grips the bat with both hands. As White draws the bat back, Brown steps backward to reappear at the bottom of the frame. Then Brown and White surge forward as White swings the bat.[1] The contact with Jensen occurs offscreen, but Brown is visible at the bottom edge of the frame while White skirts the frame before moving back into view. They remain at the bottom of the frame with their attention focused offscreen, presumably on Jensen. At one point, Brown's mouth appears to be moving. Then Brown and White simultaneously back up, pause, bend, and straighten. They move forward and offscreen again. But Brown reappears several seconds later, stepping backward before turning to head away from the building. White starts to follow but abruptly turns back to grab Jensen's backpack. White then heads in the same direction Brown headed seconds earlier.

---

[1] Although it is unclear, it appears that Brown cocks his right arm back before abruptly pushing it forward. The gesture could be a punch or a fist pump.

Detective West interviewed Brown. When he showed Brown still photos from the surveillance video, Brown identified White but at first denied he was the other individual. He identified himself after being shown a clearer image from the video. At first, Brown claimed that White was chasing Jensen and that he tried to push White off Jensen. Brown then claimed he was sitting outside when two men—Jensen and White—ran by. According to Brown, White yelled, "Hey, stop him. He took my shit." Brown admitted he shoved Jensen near the door but claimed he did so because he was trying to help White get his belongings back. He claimed that he did not see White with a baseball bat, and he denied telling anyone to take Jensen's backpack.

The State charged Brown with first-degree robbery and willful injury causing serious injury. Brown called White to testify as a witness in his defense at trial, but White exercised his Fifth Amendment right and refused to answer most questions. Brown then offered into evidence an affidavit signed by White that stated his version of events:[2]

> I was in the alley when I saw [Jensen] with my backpack. He saw me and started running. I saw someone sitting outside the [apartment complex] so I hollered to stop him, "He has my backpack." So [Brown] stopped him at the door. Then that's when I assaulted [Jensen]. [Brown] had nothing to do with it. [Brown] dropped his cigarettes and lighter. I caught up with [Brown] to ask for a cigarette. Then that's when [Brown] asked me, "What was all that about?" I told him. Then he gave a cigarette to me and said to be careful out there and went on his way. [Brown] had nothing to do with this.

---

[2] The handwritten affidavit lacks traditional punctuation and contains misspellings, abbreviations, and grammatical errors. For ease of reading, we have corrected those issues without specifying each alteration. Changes made after that—to remove the apartment complex's name and use surnames in place of first names— are shown in brackets.

Brown testified in his own defense by telling the jury the second version of events he gave Detective West, claiming he saw two men running as he sat outside the apartment complex:

> I heard one yell at the other and he said something about my bag. "Hey, he took my bag." So me—I don't know, I just reacted to it, and I ran. And I saw one guy running, he was wearing all black, and I saw one guy in a white shirt. I wasn't sure what he had. I didn't know if he had anything, a weapon or not, so I ran and caught him at the door. I pushed him at the door and stopped him, and from there, then, everything else happened too quick, like, I walked away.

The jury found Brown guilty as charged. The court sentenced Brown serve terms of incarceration of twenty-five years on the robbery charge and ten years on the willful-injury charge. It ordered Brown to serve the sentences consecutively.

**II. Sufficiency of the Evidence.**

Brown challenges the sufficiency of the evidence showing he committed robbery. He contends there is insufficient evidence to show he committed robbery either in the first or second degree, as a principal or as an aider or abettor. We review claims of insufficient evidence for correction of errors at law. *State v. Jones*, 967 N.W.2d 336, 339 (Iowa 2021). In doing so, we view the evidence and any inferences drawn from it in the light most favorable to the State and affirm if substantial evidence supports the verdict. *Id.*

The court instructed the jury on the elements the State had to prove for it to find Brown guilty of first-degree robbery:

> 1. On or about October 21, 2021, in Woodbury County, Iowa, the defendant:
> > a. had the specific intent to commit a theft and/or
> > b. aided and abetted Thomas White, who had the specific intent to commit a theft, and the defendant aided and abetted Thomas White with the knowledge that Thomas White had such specific intent.

2. To carry out his intention or to assist him in escaping from the scene, with or without the stolen property, the defendant aided and abetted Thomas White, who committed an assault upon Jeremiah Jensen . . . .

3. The defendant aided and abetted Thomas White, who was armed with a dangerous weapon.

Brown argues there is insufficient evidence to show he had the intent to rob Jensen or knew White was armed with a dangerous weapon.

When viewed in the light most favorable to the State, substantial evidence shows Brown committed first-degree robbery. Jensen testified that Brown instigated the attack by telling White to "get him." Although the surveillance video is grainy, the bat White was holding as he chased Jensen is clearly visible. After the attack, Jensen heard Brown tell White to take his backpack. Brown's testimony and White's affidavit offered a counterpoint to the State's theory, but the jury was free to reject that evidence. *See State v. Banes*, 910 N.W.2d 634, 639 (Iowa Ct. App. 2018) ("Inherent in our standard of review of jury verdicts in criminal cases is the recognition that the jury [is] free to reject certain evidence and credit other evidence." (alteration in original) (citation omitted)). The question is whether the evidence supports the finding the jury made, not whether it would support a different finding. *Jones*, 967 N.W.2d at 339. The evidence of Brown's statements before and after the attack supports a finding that Brown intended to rob Jensen, and the clear visibility of the bat on the security camera video supports a finding that Brown knew White was armed with a dangerous weapon.

**III. Merger.**

Brown next contends the district court erred by failing to merge his convictions for first-degree robbery and willful injury causing serious injury. "We

review the failure to merge convictions required by statute for correction of errors at law." *State v. Goodson*, 958 N.W.2d 791, 798 (Iowa 2021).

Convictions merge when "a public offense . . . is necessarily included in another public offense of which the person is convicted." Iowa Code § 701.9 (2021). The question is whether it is possible to commit the greater offense without also committing the lesser. *Goodson*, 958 N.W.2d at 803. "When the statute defines an offense alternatively, we examine the court's marshaling instruction to determine the alternative actually submitted to the jury. We do not consider alternatives not embraced by the instructions." *State v. Welch*, 507 N.W.2d 580, 582 (Iowa 1993) (internal citation omitted).

The marshalling instruction for first-degree robbery is set out in section II of this opinion. The marshalling instruction for willful injury causing serious injury required the State to prove:

> 1. On or about the 10th day of October 2021, the defendant aided and abetted Thomas White who hit Jeremiah Jensen in the head with a baseball bat.
> 2. The defendant aided and abetted Thomas White, who specifically intended to cause serious injury to Jeremiah Jensen.
> 3. The defendant aided and abetted Thomas White whose acts caused a serious injury to Jeremiah Jensen as defined in Instruction No. 36.

Brown concedes that the elements of the marshalling instructions are not identical "on the surface" but claims that it is impossible to satisfy the elements of first-degree robbery without satisfying the elements of willful injury.

We reject Brown's claim for merger. For the jury to find Brown guilty of first-degree robbery, the State had to prove that Brown aided and abetted White in committing an assault on Jensen while White was armed with a dangerous

weapon.  For the jury to find Brown guilty of willful injury causing serious injury, the State had to prove that Brown aided and abetted White committing an assault that caused Jensen serious injury.  Because one can commit first-degree robbery without causing a serious injury under the alternative charged,[3] merger is not required.

### IV. Mistrial.

Finally, Brown challenges the trial court's refusal to grant a mistrial.  We review the denial of a mistrial for an abuse of discretion.  *State v. Plain*, 898 N.W.2d 801, 811 (Iowa 2017).  An abuse of discretion occurs when the court errs in applying the law or when its decision is not supported by substantial evidence.  *Id.* To find an abuse of discretion in denying a mistrial, the defendant must show prejudice prevented him from having a fair trial.  *State v. Callender*, 444 N.W.2d 768, 770 (Iowa Ct. App. 1989).

Brown argues a mistrial was warranted based on trial delays resulting from juror absence or unavailability.  The trial began on Wednesday, January 20.  On Thursday, one of the jurors failed to appear and could not be reached by phone.[4] After Brown declined to waive his right to a twelve-person jury panel, the court asked the other jurors about their availability on Friday.  Because two jurors had

---

[3] In some circumstances, the crimes of willful injury and first-degree robbery merge, like when first-degree robbery is charged under the purposely-inflicts-serious-injury.  *See State v. Bloom*, 983 N.W.2d 44, 51 (Iowa 2022) (holding that "it is impossible to commit first-degree robbery under the purposely-inflicts-serious-injury alternative without also committing willful injury" (citation omitted)).

[4] When the juror finally reported to the court, he explained that he had overslept. The court allowed the parties to voir dire the juror to ensure he could remain impartial.  Brown first moved for a mistrial based on that juror's absence and renewed the motion several times afterward.

conflicts, the court continued the trial until Monday.  But on Monday, a different juror was ill.  The court postponed the trial another day before learning Tuesday morning that the juror tested positive for COVID-19.  The court then ordered a five-day recess to allow that juror to quarantine in accordance with CDC guidelines. The trial reconvened on January 28.

Brown argues he "should not have had to choose between waiting 9 days for a full 12-jury panel or waiving his right to a 12-jury panel," claiming instead that "the best and only option was a mistrial."  He claims three ways in which the delay violated his right to a fair trial:

- Because the jurors "were exposed to outside influences, life circumstances, work, family, and other obligations" during the delay, it is "plausible" that "pieces of pertinent evidence could have been forgotten" and "any forgetfulness likely adversely impacted Brown and resulted in a biased trial."

- The jurors were told the trial would likely take two days and the delay resulted in "a nearly two-week trial," making it "very conceivable that the jury returned and rushed through deliberations in an effort to conclude the trial and move on with their life plans."

- A "fear of being exposed to COVID-19 by being forced to share deliberation space with someone who could still be contagious" could "quite possibly" have caused them to "rush through deliberations without thoroughly examining the evidence."

But Brown's claims rest on mere speculation and conjecture, which provide an insufficient basis for granting a mistrial.  *See, e.g.*, *State v. Piper*, 663 N.W.2d 894, 910 (Iowa 2003) (holding that a finding that the jury was improperly influenced by

information outside the record "rests on 'objective facts as to what actually occurred in or out of the jury room,' not on speculation about what might have happened" (citation omitted)), *overruled on other grounds by State v. Hanes*, 790 N.W.2d 545 (Iowa 2010).

We find the no abuse of discretion in the trial court's denial of a mistrial. Although no Iowa cases are directly on point, *State v. Lowder*, 129 N.W.2d 11, 15 (Iowa 1964), which involved a one-month continuance following the start of trial and receipt of testimony from two witnesses, provides some guidance. In *Lowder*, the defendant did not have an attorney at the start of trial. 129 N.W.2d at 13. The court granted a continuance to allow new counsel an opportunity to prepare, but only after jury selection and the examination of two witnesses subpoenaed by the State. *Id.* Both witnesses had traveled some distance to testify that day and one was being called into military service and would be unavailable later. *Id.* The court ordered the selected jurors be available to serve in other cases during the one-month break, and most of the jurors served on juries in civil trials. *Id.* at 14. The defendant did not object to the procedure during trial. *Id.* On appeal, the defendant argued the court erred by denying a continuance before jury selection and the testimony of the first two witnesses. *Id.* He also claimed that he "was denied a fair and impartial trial, since several of the jurors selected for defendant's case served on other juries during the four weeks continuance between the first and second part of defendant's trial." *Id.* The supreme court stated it was "at a loss to see where any rights of defendant were in any manner jeopardized by the proceeding which the trial court in its discretion permitted." *Id.* at 15. Although *Lowder* focuses on counsel's preparedness to cross-examine the first two witnesses and the jurors'

service on civil juries rather than the length of the continuance, the overall concern is the same: whether continuing trial after it has begun affects the defendant's right to a fair and impartial trial. The scenario before us is less severe than the one in *Lowder* as it involves a considerably shorter break and no intervening jury service to increase the risk of jurors forgetting or confusing facts.

More instructive are cases from other jurisdictions addressing similar issues that arose during the COVID-19 global pandemic. Most notable is *United States v. Frazier*, ___ F.3d. ___, ___, 2022 WL 4073339, at *1 (M.D. Tenn. 2022), which involved several recesses because of COVID-19, including a three-week shut down in the middle of one witness's testimony. In denying a mistrial, the district court addressed and rejected the same claims Brown raises. *See Frazier*, ___ F.3d. at ___, 2022 WL 4073339, at *2. On the issue of the jurors' forgetting details of the case, it agreed that "the jurors' recollection of earlier testimony may not be as clear as their remembrance of more recent testimony" but held it was "not a basis for a mistrial. If it were, any trial of more than a few weeks would be grounds to abort." *Id.* It also noted "that breaks in a trial increase the risk that some outside influence will come to bear on a juror," but rejected the claim that outside influence would affect the jury based on its admonitions and instructions. *Frazier*, ___ F.3d. at ___, 2022 WL 4073339, at *2; *see also State v. Hanes*, 790 N.W.2d 545, 552 (Iowa 2010) ("We presume juries follow the court's instructions.").

Compared to other cases, the recess in Brown's case was relatively short. It came after both sides presented their evidence and rested. The jurors' recollection of the evidence was aided by their notes, the video evidence, and closing arguments. *See Frazier*, 2022 WL 4073339, at *2 (noting that "copious

notes, . . . coupled with closing arguments will lessen the possibility that any evidence has been truly forgotten, as opposed to having been stored away in the memory bank for later retrieval").  Finally, the court admonished the jury not to discuss the case with anyone, read news accounts, or undertake any research, which it reiterated in its instructions.  Because substantial evidence shows Brown was not prejudiced by the continuance, we affirm.

**AFFIRMED.**